UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EDUARDO U. EVERETT AND | § | CASE NO. 19-31634 |
| GLORIA R. EVERETT | § | CHAPTER 7 |
| | § | |
| DEBTORS | § | CHIEF JUDGE DAVID R. JONES |

**TRUSTEE'S MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS AND CLAIMS PURSUANT TO 11 U.S.C. § 363(b) and (f) and PAY BROKER COMMISSIONS AT CLOSING**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

*Due to the cost of mailing, copies of the exhibits referred to herein are not included with the physical copy of this motion served on parties-in-interest.  If you desire a copy of the exhibits, please email mmyers@rossbanks.com and an electronic copy will be provided.*

**To the Honorable David R. Jones,
Chief United States Bankruptcy Judge**:

COMES NOW Randy W. Williams, Trustee and would show as follows:

**A. Jurisdiction, Venue and Constitutional Authority**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and/or (N) and arises in and/or under Title 11.  The statutory predicate for the relief sought herein is Federal Rule of Bankruptcy Procedure 9019.

2. Venue is proper under 28 U.S.C. §§ 1408 and/or 1409.

3. This Court has constitutional authority to enter a final order regarding this matter.  This motion concerns essential bankruptcy matters which have no equivalent in state law thereby rendering the

Supreme Court's opinion in *Stern v. Marshall* inapplicable. *See In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *Stern v. Marshall*, 131 S.Ct. 2594 (2011)). In the alternative, all the matters addressed in this motion are essential bankruptcy matters which trigger the public rights exception. *See Id.*

### B. Background

4. On March 27, 2019 (the "Petition Date"), Eduardo and Gloria Everett (the "Debtors") filed for voluntary Chapter 7 bankruptcy protection. On the same date, the Trustee was appointed interim Chapter 7 Trustee and, having since accepted the appointment and posted the requisite bond, became permanent Trustee.

5. On the Petition Date, the Debtors owned the real property and improvements located at 3116 Kenta, Marrero, Louisiana 70072 (the "Property"). The Property is encumbered by a mortgage in favor of Standard Mortgage Corp, with a balance of approximately $94,022.00 per the Debtor's Schedules.

6. On July 17, 2019, the Trustee filed an application to employ BK Global Real Estate Services ("Broker"), to assist him with the marketing and sale of the Property [Docket Number 33]. On August 2, 2019, the Court entered an Order authorizing the Trustee's employment of Broker [Docket Number 34], see **Exhibit A** (the "Employment Order"). A copy of the Court approved listing agreement is attached as **Exhibit B** (the "Listing Agreement").

7. Shortly after approval of retention of Broker, the Property was listed for sale for $125,000.

### C. Motion to Sell

8. The Trustee proposes to sell the Property to George Saltz ("Buyer") for the sum of $112,500, plus a buyer's premium of $3,500.00, subject to the terms and conditions set forth in the attached **Exhibit C** (the "Sales Contract"). The offer by Buyer is a full list price offer and, as such, the Trustee believes it to be for fair and reasonable consideration and in the best interests of the Estate and its creditors. The Estate had previously received a list price offer for the Property; however, that buyer elected to terminate the contract after a physical inspection of the property. The Trustee requests that he be allowed to pay at closing the outstanding mortgage owed to Standard Mortgage Corp, all outstanding property taxes; broker commissions (as described below) and all usual and customary closing costs, which include, but are

not limited to, survey costs/reimbursements; escrow fees, title commitment fees, fees for tax statements/certificates, fees for preparation of a deed, recording fees and delivery/filing charges.

9. Although the Trustee is not aware of any liens against the Property, other than the mortgage and property taxes, out of an abundance of caution, he requests that the Property be sold free and clear of liens and claims pursuant to 11 U.S.C. § 363(f), with the same attaching to the proceeds of sale in the same order, priority and validity that existed on the Petition Date.

10. The Trustee further requests authorization to pay Broker the 6% commission provided for in the Listing Agreement approved by the Employment Order, with that commission being split between Broker and the real estate broker for the Buyer pursuant to the Sales Contract. The Trustee posits that the commission proposed to be paid is well within the usual and customary range of broker's commissions paid on real property sales of the type involved herein. The Trustee requests permission to pay these amounts at closing of the sale of the Property.

WHEREFORE based on the foregoing, the Trustee requests all relief sought herein and for such other and further relief to which he may show himself to be entitled.

Respectfully submitted,

*/s/ Marc Douglas Myers*

Marc Douglas Myers
Ross, Banks, May, Cron & Cavin, P.C.
SBN 00797133
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com
COUNSEL FOR THE TRUSTEE

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2019, a true and correct copy of the foregoing was sent via regular US mail to the Debtor(s), counsel for the Debtor(s), the Trustee, counsel for the Trustee, the US Trustee, all creditors and all persons requesting notice as set forth in the attached unless otherwise served by the CM-ECF system.

*/s/ Marc Douglas Myers*

Marc Douglas Myers

EXHIBIT "A"



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/02/2019

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EDUARDO EVERETT AND GLORIA EVERETT | § § | CASE NO. 19-31634 CHAPTER 7 |
| | § | |
| DEBTOR | § | JUDGE DAVID R. JONES |

**ORDER GRANTING TRUSTEE'S APPLICATION TO EMPLOY REAL ESTATE BROKER**

(Docket # __33__)

CAME ON for consideration the Trustee's Application to Employ Real Estate Broker ("Application") and the Court being of the opinion that it should be granted, it is therefore:

ORDERED that the Trustee is authorized to employ BK Global Real Estate Services, with Patrick Butler as broker-in-charge, to assist in the sale of the real property referenced in the Application on the terms and conditions stated in the listing agreement attached to the Application, which is approved; and it is further;

ORDERED that the Trustee is hereby authorized to execute any and all documents necessary to consummate the above transaction.

Signed: August 01, 2019

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT "B"

**BK Global Real Estate Brokerage Listing Agreement**

This Real Estate Brokerage Listing Agreement ("Agreement") is between Randy Williams ("TRUSTEE") and **BK Global Real Estate Services LLC** ("BROKER")

**Authority to Sell Property: Trustee** gives **Broker** the right to be the EXCLUSIVE BROKER in the sale of the real and personal property (collectively "Property") described below:

3116 KENTA DR MARRERO, LA 70072

Upon full execution of a contract for sale and purchase of the Property and court approval, all rights and obligations of this Agreement will automatically extend through the date of the actual closing of the sales contract. **Trustee** and **Broker** acknowledge that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race, color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local law. **Trustee** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

**Price:** The starting listing price of the property will be**: $125,000**.  If there are no acceptable offers after 15 days, the list price will be reduced 5% and will reoccur every 15 days until the listing expires or if an acceptable offer is received.

**Brokers Obligations:** Broker will assist the Trustee to make commercially reasonable efforts to procure the consent and agreement of the senior mortgagee ("Secured Creditor"), if necessary due to a short sale or insufficiency of the net proceeds of sale, to:

procure a purchaser for the Real Property with the best qualified offer during a public sale.

a) Release its lien with respect to the Property; and

b) Agree to a 11 U.S.C. § 506 surcharge to (x) pay our fee and expenses, any commission payable to the local real estate broker and all other fees and expenses associated with the sale, and (y) provide a carve-out for the benefit of allowed unsecured creditors of the estate.

**Brokers Duties:** Broker duties will include but will not be limited to the following services;

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues.
- Advising the trustee of any issues and discuss potential resolutions.
- Conducting the resolutions under the trustee's direction.
- Assisting the trustee in the collection of documents and information for employment.
- Making and identifying the correct contact with any secured creditors where applicable.
- Notifying the secured creditor of the upcoming sale and identifying servicer requirements.
- Assisting the trustee in establishing market value and negotiating with the Servicer an acceptable sales price and establishing a carve-out, if necessary.
- Development of online marketing, email campaign and full nationwide marketing services.
- Conducting an online sale.
- Use of the BK Global technology platform.
- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee.
- Managing contract requirements such as inspections, appraisals and HOA applications.
- Coordinating closings and assisting the trustee in the collection of required information for court filing.
- Closing the transaction and ensure the estate has received the appropriate funds.

**Local Listing Brokers Obligations: Broker** will select a **Local Listing Broker** to co-list the property and provide limited services. **Trustee** will retain both **Broker** and the **Local Listing Broker** to market the Property for sale to the public under a separate listing agreement.

**Local Listing Brokers Duties:** Local Listing Brokers duties will include but will not be limited to the following services;

- Inspecting the property and completing a broker's price opinion.
- Listing the property in the multiple listing service (MLS).
- Posting a for sale sign in the yard and coordinating showings.

**Trustee Obligations:** In consideration of **Broker's** obligations, **Trustee** agrees to:

a) Cooperate with **Broker** in carrying out the purpose of this Agreement
b) Assist the Broker as needed in obtaining the keys to the Property and make the Property available for **Broker** to show during reasonable times.
c) File all court motions and documents in a timely manner to ensure a successful sale.
d) Advise **Broker** of any special issues our court requirements.

**Compensation: 6% Real Estate Commission** will be paid out of the proceeds off the sale and is due and paid at closing. The commission will cover the costs of the **Broker**, **Local Listing Broker** and **Buyers Broker**. The commission will be paid as follows:

- 2% Broker
- 2% Local Listing Broker
- 2% Buyers Broker

**Term of Agreement:** The term of this Agreement will commence when signed by the **Trustee** and the court approves it. This Agreement will automatically terminate upon the closing of the sale of the Property, or it may be terminated by either party for any or no reason after 180 days from commencement. In addition, this Agreement will be terminated if the **Trustee** files a Report of No Distribution, files a Notice of Abandonment of the subject property, or submits a Trustee's Final Report to the Office of the United States Trustee.

**Broker** acknowledges and agrees that (a) the **Trustee** is not executing this Agreement in an individual capacity, but solely as trustee of the estate, (b) **Broker** does not and will not have any right or claim with respect to the estate and (c) **Brokers** sole recourse for payment of real estate commission, fees and expenses will be paid at closing with court approval.

This Agreement constitutes our complete agreement on this matter and supersedes all prior agreements and representations concerning the same. It may not be modified or amended except in a writing signed by both parties.

**(the remainder of this page is left intentionally blank)**

The effective date of this agreement is _____.

**BROKER:**

By:_____  Acknowledged and agreed as of the date set forth above.

Patrick Butler, Broker-in-Charge

**TRUSTEE:**

_____  Acknowledged and agreed as of the date set forth above.

Randy Williams, not individually but solely as Trustee in the referenced matter.

DocuSign Envelope ID: B80FF0DD-B138-4560-9E7D-06139671DD5C

EXHIBIT "C"

| Listing Firm: C21 Sela | Selling Firm: |
|---|---|
| Seller's Designated Agent Name & License Number: Tammy Randle Brok.0000693H ☑ Dual Agent | Buyer's Designated Agent Name & License Number: |
| Brokerage Name & License Number: C21 SELA Brok.0995699795 | Brokerage Name & License Number: |
| Phone Number: 504-883-5252   Office: 857-4404   Fax: | Phone Number:   Office:   Fax: |
| Email Address: tammyrandlese@c21sela.com | Email Address: |
| Delivered by Designated Agent to: | Day   Date   Time   AM/PM |
| Comments: | |
| Received by Designated Agent: | Day   Date   Time   AM/PM |

## LOUISIANA RESIDENTIAL AGREEMENT TO BUY OR SELL

3 Date: 9/18/19

5 **PROPERTY DESCRIPTION**: I/We offer and agree to Buy/Sell the property at:
6 (Municipal Address) 3116 Kinta Dr.
7 City Marrero ; Zip 70072 ; Parish Jefferson ; Louisiana,
8 (Legal Description) as per title
9 _____ on lands and grounds measuring approximately 60 x 100
10 or as per record title; including all buildings, structures, component parts, and all installed, built-in, permanently
11 attached improvements, together with all fences, security systems, all installed speakers or installed sound
12 systems, all landscaping, all outside TV antennas, all satellite dishes, all installed and/or built-in appliances, all
13 ceiling fans, all air conditioning or heating systems including window units, all bathroom mirrors, all window
14 coverings, blinds and associated hardware, all shutters, all flooring, all carpeting, all cabinet tops, all cabinet
15 knobs or handles, all doors, all door knobs or handles, all windows, all roofing, all electrical systems, and all
16 installed lighting fixtures, chandeliers and associated hardware, other constructions permanently attached to the
17 ground. If owned by the SELLER prior to date of this Agreement, standing timber, unharvested crops and
18 ungathered fruits of trees on the property shall be conveyed to the BUYER. The following movable items here
19 remain with the property, but are not to be considered as part of the Sale Price and have no value:
20 Existing appliances
21 _____
22 _____
23 All items listed herein are included in the property sold no matter how they are attached or installed, provided that
24 any or all of these items are in place at the time of signing of this Agreement to Buy or Sell (the
25 "Agreement"), unless otherwise stated herein. (All of the above contained in lines 5 through 22 are collectively
26 referred to herein as the "Property.") The following items are excluded from the Property sold:
27 _____
28 _____

BUYER'S Initial: GHS         Page 1 of 9         SELLER'S Initials: [initials]

ABS Rev. 01/01/19



3116 Kentas D. Mamou LA 70072    9/18/19
Property address, street, city, state, zip    Date

29  **MINERAL RIGHTS:** If the SELLER transfers any mineral rights, they are to be transferred without warranty
30  __0__% mineral rights owned by the SELLER are to be reserved by the SELLER and the SELLER shall waive
31  any right to use the surface for any such reserved mineral activity or use.
32
33  **PRICE:** The Property will be sold and purchased subject to title and zoning restrictions, servitudes of record, and
34  law or ordinances affecting the Property for the sum of _____
35  One hundred twelve thousand five hundred ($ 112,500) (the "Sale Price").
36
37  **ACT OF SALE:** The Act of Sale is to be executed before a settlement agent or Notary Public to be chosen by the
38  BUYER, on __See Line 42__, 20___, or before if mutually agreed upon. Any change of the date
39  for execution of the Act of Sale must be mutually agreed upon in writing and signed by the SELLER and the
40  BUYER. At closing, the BUYER must provide "good funds" as required by Louisiana statute LA R.S. 22:22.512 et
41  seq.
42  Act of Sale to be 15 Days after Court Approval
43  **OCCUPANCY:** Occupancy/possession and transfer of keys/access is to be granted at Act of Sale unless mutually
44  agreed upon in writing.
45
46  **CONTINGENCY FOR SALE OF BUYER'S OTHER PROPERTY:**
47  ☐ This sale is contingent on the sale of other property by the BUYER and the contingency language found
48  either in lines 302-307 or the attached addendum shall apply.
49  ☑ This sale is not contingent upon the sale of other property by the BUYER nor is the loan needed by the
50  BUYER to obtain the Sale Price contingent on the BUYER'S sale of any property.
51
52  **FINANCING:**
53  ☑ ALL CASH SALE: The BUYER warrants the BUYER has cash readily available to close the sale of this
54  Property.
55  ☐ FINANCED SALE: This sale is conditioned upon the ability of BUYER to borrow with this Property as
56  security
57  for the loan the sum of $ _____ or ____% of the Sale
58  Price by a mortgage loan or loans at an initial interest rate not to exceed ____% per annum, interest and
59  principal, amortized over a period of not less than ____ years, payable in monthly installments or on any other
60  terms as may be acceptable to the BUYER provided that these terms do not increase the cost, fees or expenses
61  to the SELLER. The loan shall be secured by (Check all that apply):
62  ☐ Fixed Rate Mortgage                ☐ FHA Insured Mortgage
63  ☐ Adjustable Rate Mortgage           ☐ Owner Financing
64  ☐ Rural Development                  ☐ Bond Financing
65  ☐ VA Guaranteed Mortgage             ☐ Conventional Mortgage
66  ☐ Other _____
67
68  The BUYER agrees to pay discount points not to exceed ____% of the loan amount.
69  Other financing conditions: __N/A__
70
71
72  The BUYER acknowledges and warrants that the BUYER has available the funds which may be required to
73  complete the sale of the Property including, but not limited to, the deposit, the down payment, closing costs, pre-
74  paid items, and other expenses. If this sale is a Financed Sale, BUYER acknowledges that any terms and
75  conditions impo___DS___ 'YER'S lender(s) or by Consumer Financial Protection Bureau Requirements shall not

GHS

BUYER'S Initial_____    Page 2 of 9    SELLER'S Initials_____

ABS Rev. 01/01/19

Case 19-31634 Document 44 Filed in TXSB on 09/26/19 Page 11 of 18
DocuSign Envelope ID: 98B9DDD2-A46B-4C3B-AB33-5C166A413ACE

DocuSign Envelope ID: B80FF0DD-B138-4560-9E7D-06139671DD5C

3116 Kenta Drive   Marrero, LA 70072                          9/18/19
Property address, street, city, state, zip                    Date

76  affect or extend the BUYER'S obligation to execute the Act of Sale or otherwise affect any terms or conditions of
77  this Agreement except as otherwise set forth herein. The BUYER shall supply the SELLER written documentation
78  from a lender that a loan application has been made and the BUYER has given written authorization to lender to
79  proceed with the loan approval process within (__) calendar days after the date of acceptance of this offer by
80  both parties. If the BUYER fails to make loan application, and to supply SELLER with written documentation of
81  that application and BUYER'S written authorization for lender to proceed with loan process within this period, the
82  SELLER may, at the SELLER'S option, elect, in writing, to terminate the Agreement and declare the Agreement
83  null and void, by giving the BUYER written notice of the SELLER'S termination. In the event the BUYER is not
84  able to secure financing, the SELLER reserves the right to provide all or part of mortgage loan(s) under the terms
85  set forth above.
86
87  **PRORATIONS/OTHER COSTS:** Real estate taxes, flood insurance premium if assumed, rents, condominium
88  dues, assessments, and/or other dues owed to homeowners associations and the like for the current year are to
89  be prorated through the date of the Act of Sale. Act of Sale costs, abstracting costs, title search, title insurance
90  and other costs required to obtain financing, shall be paid by the BUYER, unless otherwise stated herein. All
91  necessary tax, mortgage, conveyance, release certificates or cancellations and the SELLER closing fees, if any,
92  shall be paid by the SELLER. The SELLER shall pay all previous years' taxes, assessments, condominium dues,
93  and/or dues owed to homeowners associations and the like. All special assessments bearing against the Property
94  prior to Act of Sale, other than those to be assumed by written agreement, as of the date of the Act of Sale, are to
95  be paid by the SELLER.
96
97  **APPRAISAL:** ☐ This sale is NOT conditioned on appraisal. ☑ This sale IS conditioned on the appraisal of the
98  Property being not less than the Sale Price. The SELLER agrees to provide the utilities for appraisals and access.
99  If the appraised value of the Property is equal to or greater than the Sale Price, the BUYER shall pay the Sale
100 Price agreed upon prior to the appraisal. If the appraised value is less than the Sale Price, the BUYER shall
101 provide the SELLER with a copy of the appraisal within three ( 3 ) calendar days of receipt of same,
102 along with the BUYER'S written request for the SELLER to reduce the Sale Price. Within three ( 3 )
103 calendar days after the SELLER'S receipt of such written documentation of the appraised value, the BUYER shall
104 have the option to pay the Sale Price agreed upon prior to the appraisal or to void this Agreement unless the
105 SELLER agrees in writing to reduce the Sale Price to the appraised value or all parties agree to a new Sale Price.
106
107 **DEPOSIT:** Upon acceptance of this offer, or any attached counter offer, the SELLER and the BUYER shall be
108 bound by all terms and conditions of this Agreement, and the BUYER or the BUYER'S agent shall deliver within
109 72 hours, upon notice of acceptance of the offer, the BUYER'S deposit (the "Deposit") in the amount of
110 $ 1000                       or ____% of the Sale Price to be paid in the form of:
111    Cash $_____     ✓ Certified Funds $ 1000
112    Check $_____     Electronic Transfer (EFT) $_____
113 The Deposit shall be held by: ☐ Listing Broker   ☐ Selling Broker   ✓ Third Party

> DEPOSIT HELD BY THIRD PARTY: Louisiana Administrative Code Article Title 46, Part LXVII, Section 2717 requires that funds received in a real estate sales transaction shall be deposited in the appropriate sales escrow checking account, rental trust checking account or Deposit trust checking account of the listing or managing broker ("Broker") unless all parties having an interest in the funds have agreed otherwise in writing. I agree to have the Deposit related to this transaction to be held by a third party and not in a sales escrow account maintained by the Broker. I understand that the Louisiana Real Estate Commission may not have jurisdiction over those third parties holding the funds. By signature below, I acknowledge that I have read the attached addendum and acknowledge the Broker is not legally required to disburse a [deposit in accordance] with LAC 46:LXVII.2901 when a third party holds the Deposit.
>
> DocuSigned by:
> *George H. Salty*
> —16C8BD8DA4B446D...
> BUYER                                         SELLER
>                   ─DS
> BUYER            GHS                          SELLER
> BUYER'S Initials:_____         Page 3 of 9   SELLER'S Initials:_____

ABS Rev. 01/01/19

Case 19-31634   Document 44   Filed in TXSB on 09/26/19   Page 12 of 18
DocuSign Envelope ID: 98B9DDD2-A46B-4C3B-AB33-5C166A413ACE

DocuSign Envelope ID: B80FF0DD-B138-4560-9E7D-06139671DD5C

3116 Hortau Ch. Marrow, LA 70072      9/18/19
Property address, street, city, state, zip                Date

114  Failure to deliver the Deposit shall be considered a default of this Agreement. If the Deposit is held by a Broker, it
115  must be held in accordance with the rules of the Louisiana Real Estate Commission in a federally insured banking
116  or savings and loan institution without responsibility on the part of the Broker in the case of failure or suspension
117  of such institution. In the event the parties fail to execute an Act of Sale by date specified herein, and/or a dispute
118  arises as to ownership of, or entitlement to, the Deposit or funds held in escrow, the Broker shall abide by the
119  Rules and Regulations set forth by the Louisiana Real Estate Commission.
120
121  **RETURN OF DEPOSIT:** The Deposit shall be returned to the BUYER and this Agreement declared null and void
122  without demand in consequence of the following events:
123  1) If this Agreement is declared null and void by the BUYER during the inspection and due diligence period as set
124  forth in lines 167 through 200 of this Agreement;
125
126  2) If this Agreement is subject to the BUYER'S ability to obtain a loan and the loan cannot be obtained, except as
127  stated in lines 72 through 85 of this Agreement, but only if the BUYER has made good faith efforts to obtain the
128  loan;
129
130  3) If the SELLER declares the agreement null and void for failure of BUYER to comply with written document
131  requirements as set forth in lines 80 through 85.
132
133  4) If the BUYER conditions the Sale Price on an appraisal and the appraisal is less than the Sale Price and the
134  SELLER will not reduce the Sale Price as set forth in lines 97 through 105 of this Agreement;
135
136  5) If the BUYER timely terminates the Agreement after having received the leases or assessments, as set forth in
137  lines 149 through 154 of this Agreement;
138
139  6) If the SELLER is unable to timely deliver to the BUYER an approved sewerage and/or water inspection report
140  as set forth in lines 202 through 211
141
142  7) If the SELLER chooses not to repair or replace the sewer system(s) as per the SEPTIC/WATER WELL
143  ADDENDUM, and the BUYER terminates the agreement as a result thereof;
144
145  8) If the SELLER chooses not to repair or replace the private water well system(s) as per the SEPTIC/WATER
146  WELL ADDENDUM, and the BUYER terminates the agreement as a result thereof;
147
148
149  **LEASES/SPECIAL ASSESSMENTS:** The sale is conditioned upon the BUYER'S receipt of a copy of all written
150  leases, excluding mineral leases, and unpaid special assessments from the SELLER within five (5) calendar days
151  of acceptance of the Agreement. Special assessments shall mean an assessment levied on Property to pay the
152  cost of local improvements imposed by local governmental/governing authority. The BUYER will have five (5)
153  calendar days after receipt of the aforementioned documents to notify the SELLER whether they are acceptable
154  to the BUYER. Security deposits, keys/access and leases are to be transferred to the BUYER at Act of Sale.
155
156  **NEW HOME CONSTRUCTION:** If the property to be sold is completed new construction, under construction, or to
157  be constructed, check one:
158  ☐ A new home construction addendum, with additional terms and conditions, is attached.
159  ☐ There is no new home construction addendum.
160
161  **INSPECTION AND DUE DILIGENCE PERIOD:** THE BUYER ACKNOWLEDGES THAT THE SALE PRICE OF
162  THE PROPERTY WAS NEGOTIATED BASED UPON THE PROPERTY'S APPARENT CURRENT CONDITION;
163  ACCORDINGLY, the SELLER IS NOT OBLIGATED TO MAKE REPAIRS TO THE PROPERTY, INCLUDING
164  REPAIRS REQUIRED BY THE LENDER UNLESS OTHERWISE STATED HEREIN. THE SELLER IS
165  RESPONSIBLE FOR MAINTAINING THE PROPERTY IN SUBSTANTIALLY THE SAME OR BETTER
166  CONDITION AS [GHS] WHEN THE AGREEMENT WAS FULLY EXECUTED.

BUYER'S Initials [GHS] ___     Page 4 of 9     SELLER'S Initials [✓] ___

ABS Rev. 01/01/19

Case 19-31634 Document 44 Filed in TXSB on 09/26/19 Page 13 of 18
DocuSign Envelope ID: 98B9DDD2-A46B-4C3B-AB33-5C166A413ACE

DocuSign Envelope ID: B80FF0DD-B138-4560-9E7D-06139671DD5C

3116 Konta C. Marrero, LA 70072            9/18/19
Property address, street, city, state, zip                              Date

167 The BUYER shall have an inspection and due diligence period of ( 10 ) calendar days, commencing the first
168 day after acceptance of this Agreement wherein, the BUYER may, at the BUYER'S expense, have any
169 inspections made by experts or others of his choosing. Such physical inspections may include, but are not limited
170 to, inspections for termites and other wood destroying insects, and/or damage from same, molds, and fungi
171 hazards, and analysis of synthetic stucco, drywall, appliances, structures, foundations, roof, heating, cooling,
172 electrical, plumbing systems, utility and sewer availability and condition, out-buildings, and square footage. Other
173 due diligence by the BUYER may include, but is not limited to investigation into the property's school district,
174 insurability, flood zone classifications, current zoning and/or subdivision restrictive covenants and any items
175 addressed in the SELLER'S Property Disclosure Document. All testing shall be nondestructive testing. The
176 SELLER agrees to provide the utilities for inspections and immediate access. Inspection period will be extended
177 by the same number of days that the BUYER is not granted immediate access to the property or all utilities are
178 not provided by the SELLER. If the BUYER is not satisfied with the condition of the Property or the results of the
179 BUYER'S due diligence investigation, the BUYER may choose one of the following options within the inspection
180 and due diligence period:
181
182 **Option 1:** The BUYER may elect, in writing, to terminate the Agreement and declare the Agreement null and void;
183 or
184 **Option 2:** The BUYER may indicate in writing the deficiencies and desired remedies and the SELLER will within
185 seventy two (72) hours respond in writing as to the SELLER'S willingness to remedy those deficiencies
186 ("SELLER'S Response").
187
188 Should the SELLER in the SELLER'S Response refuse to remedy any or all of the deficiencies listed by the
189 BUYER, then the BUYER shall have seventy-two (72) hours from the date of the SELLER'S Response or
190 seventy-two (72) hours from the date that the SELLER'S Response was due, whichever is earlier, to: (a) accept
191 the SELLER'S Response to the BUYER'S written requests or (b) accept the Property in its current condition, or (c)
192 to elect to terminate this Agreement. The BUYER'S response shall be in writing. Upon the BUYER'S failure to
193 respond to the SELLER'S Response by the time specified or the BUYER'S electing, in writing, to terminate this
194 Agreement, the Agreement shall be automatically, with no further action required by either party, ipso facto null
195 and void except for return of Deposit to the BUYER.
196
197 FAILURE TO GIVE WRITTEN NOTICE OF EITHER TERMINATION OR DEFICIENCIES AND DESIRED
198 REMEDIES TO THE SELLER (OR THE SELLER'S DESIGNATED AGENT) AS SET FORTH IN LINES 161
199 THROUGH 180 WITHIN THE INSPECTION AND DUE DILIGENCE PERIOD SHALL BE DEEMED AS
200 ACCEPTANCE BY THE BUYER OF THE PROPERTY'S CURRENT CONDITION.
201
202 **PRIVATE WATER/SEWERAGE:**
203 ☐ There is/are _____ (___) private water system(s) servicing only the primary residence, and the attached
204 private Septic/Water Addendum inspections shall include only the system(s) supplying service to the primary
205 residence.
206
207 ☐ There is/are _____ (___) private septic/treatment system(s) servicing only the primary residence and
208 the attached private Septic/Water Addendum inspections shall include only those systems supplying service to
209 the primary residence.
210
211 ☑ There is NO private septic/treatment system(s) servicing only the primary residence.
212
213 **HOME SERVICE/WARRANTY:** A home service/warranty plan ☐ will / ☑ will not be purchased at the closing of
214 sale at a cost not to exceed $_____ to be paid by ☐ the BUYER / ☐ the SELLER. Home Service
215 Warranty will be _____ by _____

GHS
BUYER'S Initial: _____          Page 5 of 9          SELLER'S Initials: _____

ABS Rev. 01/01/19

Case 19-31634   Document 44   Filed in TXSB on 09/26/19   Page 14 of 18
DocuSign Envelope ID: 98B9DDD2-A46B-4C3B-AB33-5C166A413ACE

DocuSign Envelope ID: B80FF0DD-B138-4560-9E7D-06139671DD5C

3116 Kenta Ct. Marrero, LA 70072                                9/18/19
Property address, street, city, state, zip                       Date

216  It is understood that the Agent/Broker may receive compensation from the home warranty company for actual
217  services performed. The home service warranty plan does not warrant pre-existing defects and options, and does
218  not supersede or replace any other inspection clause or responsibilities. If neither the BUYER nor the SELLER
219  accepts the home service warranty plan, they declare that they have been made aware of the existence of such a
220  plan, and further declare that they hold the Broker and Agents harmless from any responsibility or liability due to
221  their rejection of such a plan.
222
223  **WARRANTY OR AS IS CLAUSE WITH WAIVER OF RIGHT OF REDHIBITION:** (CHECK ONE ONLY)
224  ☐ A. SALE WITH WARRANTIES: The SELLER and the BUYER acknowledge that this sale shall be with full
225  SELLER warranties as to any claims or causes of action including but not limited to redhibition pursuant to
226  Louisiana Civil Code Article 2520, et seq. and Article 2541, et seq.
227  ☒ B. SALE "AS IS" WITHOUT WARRANTIES: The SELLER and the BUYER hereby acknowledge and recognize
228  that the Property being sold and purchased is to be transferred in "as is" condition and further the BUYER does
229  hereby waive, relieve and release the SELLER from any claims or causes of action for redhibition pursuant to
230  Louisiana Civil Code Article 2520, et seq. and Article 2541, et seq. or for reduction of Sale Price pursuant to
231  Louisiana Civil Code Article 2541, et seq. Additionally, the BUYER acknowledges that this sale is made without
232  warranty of fitness for ordinary or particular use pursuant to Louisiana Civil Code Article 2524. The SELLER and
233  the BUYER agree that this clause shall be made a part of the Act of Sale.
234  ☐ C. NEW HOME WARRANTIES. Notwithstanding lines 223 through 233 and irrespective of whether A or B
235  above is checked, if the Property is a new construction, the parties agree that neither A or B will apply but instead
236  the provisions of the New Home Warranty Act (LA R.S. 9:3141 et seq.) shall apply. The warranty of condition of
237  this Property is governed by the New Home Warranty Act if a home on the Property is a "home" as defined in the
238  New Home Warranty Act.
239
240  **MERCHANTABLE TITLE/CURATIVE WORK:** The SELLER shall deliver to the BUYER a merchantable title at
241  the SELLER'S costs (see lines 244 through 246). In the event curative work in connection with the title to the
242  Property is required or is a requirement for obtaining the loan(s) upon which this Agreement is conditioned, the
243  parties agree to and do extend the date for passing the Act of Sale to a date not more than
244  Thirty _____ (30) calendar days from the date of the Act of Sale stated herein. The
245  SELLER'S title shall be merchantable and free of all liens and encumbrances except those that can be satisfied at
246  Act of Sale. All costs and fees required to make title merchantable shall be paid by the SELLER. The SELLER
247  shall make good faith efforts to deliver merchantable title. The SELLER'S inability to deliver merchantable title
248  within the time stipulated herein shall render this Agreement null and void, reserving unto the BUYER the right to
249  demand the return of the Deposit ~~and to recover from the SELLER actual costs incurred in processing and evaluation~~
250  ~~of the loan and/or mortgage of the property.~~
251
252  **FINAL WALK THROUGH:** The BUYER shall have the right to re-inspect the Property within five (5) calendar
253  days prior to the Act of Sale, or occupancy, whichever will occur first in order to determine if the Property is in the
254  same or better condition as it was at the initial inspection(s) and to insure all agreed upon repairs have been
255  completed. ~~The SELLER shall agree to provide the BUYER with the right through any and immediate access to the~~
256  ~~property.~~
257
258  **DEFAULT OF AGREEMENT BY THE SELLER:** In the event of any default of this Agreement by the SELLER,
259  the BUYER shall at the BUYER'S option have the right to declare this Agreement null and void with no further
260  demand, or to demand and/or sue for any of the following:
261
262  1) Termination of this Agreement; ~~2) Specific performance; 3) Termination of this Agreement and any amount~~
263  ~~equal to 10% of~~ _____ ~~the as stipulated damages.~~

BUYER'S Initials _____ _____        Page 6 of 9        SELLER'S Initials _____ _____
ABS Rev. 01/01/19

3116 Kenta Dr. Marrero, LA 70072    9/18/19
Property address, street, city, state, zip    Date

264  Further, the BUYER shall be entitled to the return of the Deposit. ~~Theexpexalingxpartxxxanyxklgationxxxangxxxx~~
265  ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
266  ~~xxxxxxxxxxxxx.~~
267
268  **DEFAULT OF AGREEMENT BY BUYER:** In the event of any default of this Agreement by the BUYER, the
269  SELLER shall have at the SELLER'S option the right to declare this Agreement null and void with no further
270  demand, or to demand and sue for any of the following: 1) Termination of this Agreement~~xxxSpecific~~
271  ~~performancex.xxRecoxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
272  ~~damagesx.~~
273
274  Further, the SELLER shall be entitled to retain the Deposit. ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
275  ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxBUYERxxxxxxxbe~~
276  ~~xxxxxxxxxxxxxxxxxx~~
277
278  **MOLD RELATED HAZARDS NOTICE:** An informational pamphlet regarding common mold related hazards that
279  can affect real property is available at the EPA website http://www.epa.gov/iaq/molds/index.html. By initialing
280  this page of the Agreement, the BUYER acknowledges that the real estate agent has provided the BUYER with
281  the EPA website enabling the BUYER to obtain information regarding common mold related hazards.
282
283  **OFFENDER NOTIFICATION:** The Louisiana State Police maintains the State Sex Offender and Child Predator
284  Registry through the Louisiana Bureau of Criminal Identification and Information. It is a public access database of
285  the locations of individuals who are required to register pursuant to LA R.S. 15:540, et seq. The website for the
286  database is http://www.lsp.org/socpr/default.html. Sheriff and police departments serving jurisdictions of
287  450,000 also maintain such information. Inquiries can be made by phone at 1-800-858-0551 or 1-225-925-6100.
288  Send written inquiries to Post Office Box 66614, Box A-6, Baton Rouge, Louisiana 70896.
289
290  **FLOOD HAZARD INFORMATION:**
291  An informational website regarding flood hazards that can affect real property is available at the FEMA website
292  https://msc.fema.gov/portal.
293
294  **CHOICE OF LAW:** This Agreement shall be governed by and shall be interpreted in accordance with ~~the laws of~~
295  ~~the State of Louisiana~~.  APPLICABLE FEDERAL LAW
296
297  **DEADLINES:** TIME IS OF THE ESSENCE and all deadlines are final, except where modifications, changes, or
298  extensions are made in writing and signed by all parties to this Agreement. All "calendar days" as used in this
299  Agreement shall end at 11:59 p.m. in Louisiana.
300
301  **ADDITIONAL TERMS AND CONDITIONS:**
302  Purchaser agrees to pay $3500 buyers Premium
303  Offer is Contigent on Court approval.
304  - There will not be any adjustments to taxes paid/assumed after closing:
305  - At closing the Trustee will provide a special warranty deed
306  - ~~Seller is a bankruptcy Trustee and has no knowledge, and makes no representation of, any physical, environmental or legal aspect of~~ the property
     being sold and that buyer is relying solely on its own information/investigation with regard to all aspects of this transaction:
307
308
309  **ROLES OF BROKERS AND DESIGNATED AGENTS:** Broker(s) and Designated Agent(s) have acted only as
310  real estate brokers to bring the parties together and make no warranty to either party for performance or non-
311  performance of any part of this Agreement or for any warranty of any nature unless specifically set forth in writing.

BUYER'S Initials [GHS]        Page 7 of 9        SELLER'S Initials

ABS Rev. 01/01/19



DocuSign Envelope ID: B80FF0DD-B138-4560-9E7D-06139671DD5C

___Bill Pkwenta__ O. _Marrero, LA___ __70072__   __9/18/19__
Property address, street, city, state, zip                                    Date

312  Broker(s) and Designated Agent(s) make no warranty or other assurances whatsoever concerning Property
313  measurements, square footage, room dimensions, lot size, Property lines or boundaries. Broker(s) and
314  Designated Agent(s) make no representations as to suitability or to a particular use of the Property, and the
315  BUYER has or will independently investigate all conditions and characteristics of the Property which are important
316  to the BUYER. The BUYER is not relying on the Broker or the Designated Agent(s) to choose a representative to
317  inspect or re-inspect the Property; the BUYER understands any representative desired by the BUYER may
318  perform this function. In the event Broker/Agent(s) provides names or sources for such advice or assistance,
319  Broker/Agent(s) does not warrant the services of such experts or their products and cannot warrant the condition
320  of Property or interest to be acquired or guarantee that all defects are disclosed by the SELLER(S).
321  Broker/Agent(s) do not investigate the status of permits, zoning, code compliance, restrictive covenants, or
322  insurability. The Broker(s) and Designated Agent(s) specifically make no warranty whatsoever as to whether or
323  not the Property is situated in or out of the Government's hundred-year flood plan or is or would be classified as
324  wetlands by the U.S. Army Corps of Engineers, or as to the presence of wood destroying insects or damage there
325  from. The BUYER(S) are to satisfy themselves concerning these issues. Designated Agent shall be an
326  independent contractor for Broker if the conditions as set forth in LA R.S. 37:1446(h) are met.
327
328  **LIST ADDENDA TO BE ATTACHED AND MADE A PART OF THIS AGREEMENT:**
329  ☐ Contingency for Sale of the BUYER'S Other Property Addendum     ☐ Private Water/Sewerage Addendum
330  ☐ Condominium Addendum                                              ☐ Deposit Addendum
331  ☐ FHA Amendatory Clause                                             ☐ _____
332  ☐ New Construction Addendum                                         ☐ _____
333
334  If any of the pre-printed portions of this Agreement vary or are in conflict with any additional or modified terms on
335  blanks provided in this form or Addendum attached to this Agreement, the additional, modified or Addendum
336  provisions control.
337
338  **SINGULAR – PLURAL USE:** Wherever the word BUYER or the word SELLER occurs in this Agreement or is
339  referred to, the same shall be construed as singular or plural, masculine or feminine or neuter, as the case may
340  be.
341
342  **ACCEPTANCE:** Acceptance of this Agreement must be in writing. This agreement may be executed by use of
343  electronic signatures, in accordance with the Louisiana Uniform Electronic Transaction Act. The original of this
344  Agreement shall be delivered to the listing Broker's firm. This Agreement and any supplement addendum or
345  modification relating hereto, including any photocopy, facsimile or electronic transmission thereof, may be
346  executed in two or more counterparts, all of which shall constitute one and the same Agreement.
347
348  **NOTICES AND OTHER COMMUNICATIONS:** All notices, requests, claims, demands, and other communications
349  related to or required by this Agreement shall be in writing. Notices permitted or required to be given (excluding
350  service of process) shall be deemed sufficient if delivered by (a) mail, (b) hand delivery; (c) overnight delivery; (d)
351  facsimile, (e) email, or (f) other e-signature transmissions addressed to the respective addresses of the parties as
352  (a) written on the first page of this Agreement; (b) as designated below on lines 361 through 370; or (c) at such
353  other addresses as the respective parties may designate by written notice.
354
355  The BUYER and SELLER agree the use of electronic documents and digital signatures is acceptable and will be
356  treated as originals of the signatures and documents transmitted in the above referenced real estate transaction.
357  Specifically, the BUYER and SELLER consent to the use of electronic documents, the electronic transmission of
358  documents, and the use of electronic signatures pertaining to this Agreement, and any supplement addendum or
359  modification relating thereto, including but not limited to any notices, requests, claims, demands and other
360  communications ⎯DS⎯  th in the Agreement.
         _GHS_
BUYER'S Initials_____  ____        Page 8 of 9    SELLER'S Initials _W_  ____

ABS Rev. 01/01/19

*Handwritten at top:* 3116 Benita Ct. Marrero, LA 70072   Date: 9/18/19

Property address, street, city, state, zip

361 ☐ The BUYER further authorizes his or her agent to electronically deliver notices and other communications to
362 the email address he or she provided to his or her agent. Furthermore, the Buyer authorizes the Seller's agent to
363 electronically deliver notices and communications to be delivered to the following address:
364
365    BUYER's Agent email address(es): _Tammy randles @ C21sela.com_
366 ☐ The SELLER further authorizes his or her agent to electronically deliver notices and other communications to
367 the email address he or she provide to his or her agent. Furthermore, the Seller authorizes the Buyer's agent to
368 electronically deliver notices and communications to be delivered to the following address:
369
370    SELLER's Agent email address(es): _Tammy randles @ C21sela.com_
371 The authorization contained in this Section is not an authorization for the Buyer's agent to communicate directly
372 with the Seller or a Seller's agent to communicate directly with the Buyer.
373
374 **CONTRACT**: This is a legally binding contract when signed by both the SELLER and the BUYER. READ IT
375 CAREFULLY. If you do not understand the effect of any part of this Agreement seek legal advice before signing
376 this contract or attempting to enforce any obligation or remedy provided herein.
377
378 **ENTIRE AGREEMENT**: This Agreement constitutes the entire Agreement between the parties, and any other
379 agreements not incorporated herein in writing are void and of no force and effect.
380
381 **EXPIRATION OF OFFER:**
382 This offer is binding and irrevocable until _Sept 30_, 20_19_ at _5:00_ ☐AM ☒PM ☐NOON. The
383 Acceptance of this offer must be communicated to the offering party by the deadline stated on line 382 to be

385 *DocuSigned by:* George H. Salty   9/18/2019          X_____
386  —18C58D8DA4B446D...
387 ☒ Buyer's / ☐ Seller's Signature   Date/Time ☐AM ☐PM      ☐ Buyer's / ☐ Seller's Signature   Date/Time ☐AM ☐PM
388 _____        _____
389 Print Buyer's/Seller's Full Name (First, Middle, Last)      Print Buyer's/Seller's Full Name (First, Middle, Last)
390
391 This offer was presented to the ☐ Seller ☐ Buyer by         Day/ Date/ Time ☐ AM ☐ PM ☐ NOON
392                                                            see amendments herein
393 This offer is:  ☐ Accepted   ☐ Rejected (without counter) ☒ ~~Countered~~ (See Attached Counter) by:
394
395 X_____        X_____
                                               *(signature)* Randy W. Mis  Truste
396 ☐ Buyer's / ☐ Seller's Signature   Date/Time ☐AM ☐PM      ☐ Buyer's / ☒ Seller's Signature   Date/Time ☐AM ☐PM
397
398 Print Buyer's/Seller's Full Name (First, Middle, Last)      Print Buyer's/Seller's Full Name (First, Middle, Last)
                                                                  9/20/19
399
This offer was presented to the ☐ Seller ☐ Buyer by         Day/ Date/ Time ☐ AM ☐ PM ☐ NOON

ABS Rev. 01/01/19                    Page 9 of 9




DocuSign Envelope ID: B80FF0DD-B138-4560-9E7D-06139671DD5C



# DEPOSIT ADDENDUM
## TO LOUISIANA RESIDENTIAL AGREEMENT TO BUY OR SELL

### DEPOSIT HELD BY BROKER[1]

When a dispute exists in a real estate transaction regarding the ownership or entitlement to funds held in a sales escrow checking account, the broker holding the funds is required to send written notice to all parties and licensees involved in the transaction. Within 60 days of the scheduled closing date or knowledge that a dispute exists, whichever occurs first, the broker shall do one of the following:

1. disburse the funds upon the written and mutual consent of all of the parties involved;
2. disburse the funds upon a reasonable interpretation of the contract that authorizes the broker to hold the funds. Disbursement may not occur until 10 days after the broker has sent written notice to all parties and licensees;
3. place the funds into the registry of any court of competent jurisdiction and proper venue through a concursus proceeding;
4. disburse the funds upon the order of a court of competent jurisdiction;
5. disburse the funds in accordance with the Uniform Unclaimed Property Act of 1997 as set forth in R.S. 9:151 et seq.

### DEPOSIT HELD BY THIRD PARTY

These requirements do not apply when a dispute arises regarding the ownership or entitlement to a Deposit held by a third party. The Louisiana Real Estate Commission may not have jurisdiction over those third parties holding the funds.

Deposit held by: **Court or sellers title agent**

Buyer's Signature: *George H. Saltz* (DocuSigned)
Print Name: George H. Saltz
Date: 9/18/2019

Buyer's Signature: _____
Print Name: _____
Date: _____  Time: __ AM __ PM

Seller's Signature: _____
Print Name: _____
Date: 9/20/19  Time: __ AM __ PM

Seller's Signature: _____
Print Name: _____
Date: _____  Time: __ AM __ PM

---

[1] Louisiana Administrative Code Title 46, Chapter LVXII, Section 2901.